Minute Order Form (06/97)

JS6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 401 | DATE | 3/7/2001 |
| CASE TITLE | William Cook vs. William Henderson | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [13] is granted. Judgment is entered in favor of the defendant, William Henderson and against the plaintiff, William Cook. Defendant's motion to strike portions of plaintiff's Rule 56.1 statements [21] is granted. Plaintiff's motion to strike portions of defendant's 56.1 statements [28] is moot. The balance of the motions are either denied as stated in the body of the Memorandum Opinion or moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAR - 9 2001 date docketed | 33 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| MD7 | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM COOK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 00 C 401 |
| WILLIAM HENDERSON, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE, | ) ) ) ) |
| Defendants. | ) |

DOCKETED
MAR - 9 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff's pro se complaint alleges that defendant United States Postal Service discriminated against him on the basis of age, color, race, and retaliation.[1] Defendant presently moves for summary judgment asserting that plaintiff is time-barred from litigating any alleged conduct that occurred prior to July 18, 1997 and that there is no evidence to support plaintiff's claims of discrimination, hostile work environment, retaliation, and disparate treatment. For the reasons articulated below, the court grants the defendant's motion.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The

---

[1] Plaintiff's complaint also included a claim for discrimination on the basis of religion but Judge Leinenweber, the district court judge previously assigned to this case, granted defendant's motion to dismiss this claim on April 18, 2000.

party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-599. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS

Plaintiff began working for the United States Postal Service ("USPS") in 1975 and he currently works as a Review Clerk at the Processing and Distribution Center in Carol Stream, Illinois. According to plaintiff, on March 7, 1998

> ... [plaintiff] was working overtime on a scheduled day off. [He] was assigned by Supervisor Betty Dinwiddie to work in aisle #4 casing mail. Ms. Cruz entered the area where [plaintiff] was working and told [plaintiff] to move from Aisle #4 to a specific seat in Aisle #5. Once [plaintiff] moved to the seat [Cruz] assigned [plaintiff] to in Aisle #5, [he] discovered that the lighting was inadequate. Because the inadequate lighting would affect the level of [plaintiff's] efficiency in casing the mail, [plaintiff] approached Ms Cruz to ask her if [plaintiff] could move to a different seat in Aisle #5. Ms. Cruz responded in an explosively loud voice stating, "You will take the seat I say, take it and sit down." [Plaintiff] asked Ms. Cruz to "please treat me like a human being." Ms. Cruz responded that "[She] didn't need [my] Goddamn advice."

(Pl.'s Ex. 9 at 11 (last two alterations in original)).[2]

---

[2] According to Cruz, the incident occurred as follows:

(continued...)

2

On March 10, 1998, plaintiff was issued a notice of a seven day suspension. The notice states that the reason for the suspension is conduct unbecoming a postal employee based on the March 7, 1998 incident and the fact that plaintiff had been issued a "Letter of Warning on May 5, 1997 for Failure to Follow Instruction." (Def.'s Ex. 5.)

On May 14, 1998, plaintiff filed with the USPS two Equal Employment Opportunity

---

[2](...continued)
"On March 7, 1998, . . . Cruz . . . asked all USPS employees, including [plaintiff] Cook, to consolidate and move from two aisles of work space to one aisle, for efficient supervision and processing. Cook refused to move. She again instructed Cook to move, but he continued to refuse, and told Cruz he did not want to work where she had placed him. She started to walk away from Cook, but he came after her, raising his voice and insulting her. He told Cruz she was a bad supervisor and a "wannabe black."

Pl.'s Statement of Material Facts ¶ 12) Contrary to plaintiff's assertions, Cruz's statements are neither contradicted by her EEO Investigative Affidavit nor hearsay. The EEO Affidavit states, in full, as follows:

I, Carmen Cruz, Race (Hispanic), Color (brown), Sex (Female) and Age (D.O.B. 10-6-59), Acting Supervisor Distribution Operations, at Carol Stream Processing and Distribution Center in Carol Stream IL, did not discriminate against the complainant when he was issued discipline for exhibiting conduct that was unacceptable as a postal employee. The complainant was asked to move to another seating assignment along with 8 other employees, due to closing down the aisle area for consolidating mail and dispatching purposes. There were witnesses to the incident in question that can attest to the complainant's behavior, The complainant has been making comments, racially, to me since I started supervisor as an Acting Supervisor Distribution Operations [sic]. The Manager of Distribution was made aware of his conduct and the decision to issued [sic] the discipline was made. I am not aware of his prior EEO activity other than receiving inquiry to respond to this complaint. End of Statement.

(Def.'s Ex. 6.) . With regard to the hearsay objection, the plaintiff's statements retold in the affidavit are being offered against plaintiff and, therefore, are admissions by a party-opponent, which are not hearsay. *See* Fed. R. Evid. 801(d)(2). Additionally, the statements that Cruz is a bad supervisor and a "wannabe black" are not being offered to prove the truth of the matter asserted and fall outside the hearsay rule for this reason as well. *See* Fed. R. Evid. 801(c).

3

("EEO") Complaints for Discrimination in the Postal Service. Complaint case number IJ-601-0037-98 states that the following people discriminated against plaintiff on account of race, color, sex, and age, and in retaliation: (1) James Luckett, (2) Micheal Smith, (3) Betty Dinwiddie, and (4) Carmen Cruz.[3] Plaintiff describes the alleged discrimination as follows:

> I was verbally and emotionally abused by [Cruz], I was improperly detained and interrogated without union representation [Smith]. I was retaliated against and convicted by these individuals to issue me harsh discipline [Luckett, Smith, Dinwiddie]. Because of my race, color, sex and age [Cruz] and because of my prior EEO activity and whistle blowing (retaliation) [Luckett].

(Def.'s Ex. 8.) Complaint case number IJ-6-1-0038-98 named as the alleged discriminatory actors "(1) Postal Inspector (2) Police (3) Officers (4) Management and Agents of the U.S. Postal Service, including (5) A/Supr. Carmen Cruz (and to numerous others [sic] to list)" and describes the specific race, color, sex, age, and retaliation discrimination as follows:

> My most recent subjection of disparate treatment occurred on March 7, 1998, when I was verbally and emotionally abused by [Cruz] causing me a great deal of emotional distress and anxiety as well as humiliation and embarrassment. I have had to endure a "hostile atmosphere" and disparate treatment as a reprisal by [the postal inspector, police, officers, and management and agents of the U.S. Postal Service] for a long period of time.

(Def.'s Ex. 8.) Both EEO complaints state that plaintiff is a "Dark Complected" "Black American" male over 40 years of age. No decision having issued regarding his complaints within 180 days of plaintiff's filing of his EEO complaint, plaintiff filed suit in the district court. See 29 C.F.R. § 1614.407(b) ("A complainant . . . is authorized under Title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court . . . [a]fter 180 days from the date of filing an individual . . . complaint if an appeal has not been filed and final action has not been taken."). Plaintiff's district court complaint alleges that defendant

---

[3]All named appear to be either supervisors or management officials.

violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981 ("§ 1981"), by discriminating against him on account of his age, color, race, and sex, and by retaliating against him for previous Title VII activity.

## DISCUSSION

A plaintiff may only bring a claim under either ADEA or Title VII if the claim is based on events that occurred within 300 days of the plaintiff filing an EEO complaint. *See* 29 U.S.C. § 626(d)(2) (ADEA); 42 U.S.C. § 2000e-5 (Title VII); *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995) (ADEA requires filing of EEOC charge within 300 days of the discriminatory act); *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999) ("Under Title VII, a plaintiff has 300 days from the occurrence of an allegedly discriminatory act in which to file a timely charge . . . ."). With regard to § 1981, the alleged discriminatory events must have occurred within two years of the plaintiff filing suit in district court. *See Smith v. City of Chicago Heights*, 951 F.2d 834, 836 n.1 (7th Cir. 1992) (Illinois' two year statute of limitations for personal injury claims, 735 ILCS 5/13-202, applies to § 1981 actions). As such, this court will only examine evidence of conduct that occurred after July 18, 1997 for the ADEA and Title

VII claims, and evidence of conduct that occurred after May 14, 1996 for the § 1981 claims.[4]

Plaintiff presents no direct evidence of discrimination within the applicable time periods set forth above and appears to be relying on the burden-shifting method of proving discrimination set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[5] As recently reiterated by the Seventh Circuit in *Malaca v. City of Madison*, the *McDonnell Douglas* framework provides that a plaintiff must first establish a prima facie case of discrimination. 224 F.3d 727, 729 (7th Cir. 2000). Once plaintiff has proven his prima facie case, the burden of production then shifts to

---

[4] The court notes that plaintiff has alleged no facts that would warrant the application of the "continuing violation doctrine," which allows plaintiffs to sue for discriminatory acts occurring before the 300 day period when the acts are part of a policy or pattern of continuing discrimination and "it would be unreasonable to expect the plaintiff to perceive offensive conduct as Title VII harassment before the limitations period runs, or the earlier discrimination may only be recognized as actionable in light of events that occurred later, within the period of the statute of limitations." *Hardin*, 167 F.3d at 344. Plaintiff admits that he has filed at least three lawsuits against the USPS for alleged discrimination and at least 15 EEO complaints alleging discrimination by USPS employees. Therefore, it appears that plaintiff was aware of the allegedly offensive conduct and, indeed, sought relief under Title VII. Contrary to plaintiff's belief, the fact that plaintiff filed these EEO complaints over the years evidences that not only is the continuing violation doctrine inapplicable, it is unneeded since plaintiff has already sought redress for all his claimed acts of prior discrimination.

[5] The Seventh Circuit recently reiterated that direct evidence of discrimination "is evidence which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." *Walker v. Glickman*, ___ F.3d ___, No. 00-1978, 2001 WL 194510 (7th Cir. Feb. 27, 2001) (Title VII case) (internal quotation marks and citation omitted). "Direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000) (ADEA case). Plaintiff alleges that at some time prior to the March 7, 1998 incident "Cruz expressed her disgust with men stating that 'All men are the same, men are dogs' and 'Men just think with their dicks.'" (Pl.'s Ex. 9 at 11.) Plaintiff, however, fails to state when Cruz allegedly made these comments and, therefore, the plaintiff has not shown that these comments were made "(1) around the time of, and (2) in reference to, the adverse employment action complained of." *Hunt v. City of Markham*, 219 F.3d 649, 652 (7th Cir. 2000). Plaintiff not only fails to present direct evidence of discrimination, but also repeatedly argues that various adverse actions allegedly taken against him were "pre-textual," further indicating reliance on the burden-shifting method of proof. As explained below, whether an employer's actions are pretextual is an inquiry made under the *McDonnell Douglas* framework.

6

plaintiff's employer to articulate a nondiscriminatory reason for its employment decision, but the burden of persuasion always remains with the plaintiff. *Id.* If the employer articulates such a non-discriminatory reason, the burden then shifts back the plaintiff to establish that the employer's stated reason is pre-textual and that a discriminatory reason actually formed the basis for the employer's actions. *Id.* The *McDonnell Douglas* framework applies to claims brought under Title VII, ADEA, and § 1981. *See Id.* (Title VII and § 1981); *Radue*, 219 F.3d at 617 (ADEA).

In order to set forth a prima facie case under Title VII, ADEA, or § 1981, plaintiff must show that (1) he is a member of a protected class, (2) he was meeting his employer's legitimate performance expectations, (3) he suffered an adverse employment action, and (4) he was treated less favorably than similarly situated persons outside of his protected class. *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999) (applying Title VII framework to § 1981 claim); *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 572 (7th Cir. 1998) (ADEA). Arguably, plaintiff has failed to demonstrate a genuine issue of fact as to whether he was meeting his employer's legitimate performance expectations. Plaintiff presented no evidence regarding this element of proof in response to defendant's evidence that his supervisors believe he is a poor worker and he has been disciplined on prior occasions. Nevertheless, because the prima facie burden on plaintiff is low and since plaintiff has been employed with the defendant since 1975, the court will assume that element two is established for purposes of the motion. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989) (plaintiff's burden of proving a prima facie case "is not onerous"); *Bellaver v. Quanex Corp.*, 200 F.3d 485, 493 (7th Cir. 2000) ("The plaintiff's evidence on the prima facie case need not be overwhelming or even destined to prevail; rather, the

7

plaintiff need present only 'some evidence from which one can infer that the employer took adverse action against the plaintiff on the basis of a statutorily proscribed criterion.'"). As to element (4), however, the only evidence plaintiff presents in support of his contention that other individuals outside his protected class were treated more favorably is his affidavit that none of the individuals working the same shift as plaintiff were treated in the manner he alleges Cruz treated him. Plaintiff fails to identify whether any of these individuals were outside the protected class of which he is a part or how they were similarly situated to plaintiff. As such, the court cannot infer that individuals outside plaintiff's protected class were treated more favorably and plaintiff, therefore, plaintiff has failed to meet his initial burden of proving the fourth element of his prima facie case.

Assuming *arguendo* that plaintiff's hostile work environment claim is properly before the court, plaintiff likewise fails to show that a genuine fact issue exists on this claim. A claim of either sex or race discrimination based on hostile work environment requires severe or pervasive conduct that alters the conditions of an employee's employment. *See Mason v. Southern Illinois Univ.*, 233 F.3d 1036 1043 (7th Cir. 2000) (race); *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806 (7th Cir. 2000) (sex). Plaintiff failed to present evidence of either severe of pervasive conduct. The only concrete examples of alleged discriminatory conduct that plaintiff proffers are the few undated comments noted in footnote 5 above, and the March 7, 1998 incident. No reasonable jury could find these few incidents severe or pervasive enough to alter the conditions of plaintiff's employment.

Finally, in order to prove retaliation, plaintiff must show that "(1) he engaged in activity protected under Title VII, (2) he suffered an adverse employment action and (3) a causal

8

connection between the adverse action and his protected activity." *Fyfe* v. *City of Fort Wayne*, ___ F.3d ___, No. 00-1396, 2001 WL 171173, at *3 (7th Cir. 2001). Plaintiff fails to argue exactly what evidence supports a causal connection. The facts stated in a light most favorable to the plaintiff are that, because the lighting was unfavorable, he resisted his supervisor Cruz's order to move; that, in response, Cruz rudely ordered him to obey her; and that she initiated discipline, which was issued. Plaintiff has no evidence other than his personal belief that Cruz acted in reprisal for some earlier protected activity. He does not offer evidence that Cruz knew of his protected activity, or that there was any logical connection between the March 7 incident and any of plaintiff's prior protected activity. In short, a jury would have no basis from which to draw an inference of retaliation. Defendants' request for summary judgment must, therefore, be granted on plaintiff's retaliation claim.

## CONCLUSION

For the above-stated reasons, the court grants defendant's motion for summary judgment [#13]. In addition, the court grants defendant's motion to strike portions of plaintiff's Rule 56.1 statements [#21]. Plaintiff's motion to strike portions of defendants 56.1 statements [#28] is moot. The balance of the motions are either denied as stated in the body of this memorandum opinion or moot.

Date: March 7, 2001

Enter: *Joan H. Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge

9